821 A.2d 1

Lawrence CAMPBELL

v.

STATE of Maryland.

No. 26, Sept. Term, 2002.

Court of Appeals of Maryland.

April 7, 2003.

Geraldine K. Sweeney, Assistant Public Defender, (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Sarah Page Pritzlaff, Assistant Attorney General, (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

HARRELL, Judge.

We granted certiorari in this case to determine whether a trial judge had jurisdiction to consider an out-of-time supplement to a timely filed motion for a new trial in a criminal matter, pursuant to Maryland Rule 4–331(2000), and, if so, whether the trial judge abused his discretion by denying the motion on the supplemental ground on its merits. We find that the trial judge did have authority to consider the pertinent supplement and that he properly denied the motion for a new trial.

## I.

This underlying case arose from a shooting incident that occurred outside of a Kentucky Fried Chicken (KFC) restaurant in Prince George's County. One of the State's witnesses, Oscar Veal, a self-confessed "hit man" who pled guilty in a federal court to seven counts of murder in aid of racketeering activities (18 U.S.C. § 1959(a)(1) (1994)), and whose credibility the defendant sought to impeach both at trial and through newly discovered evidence, became the focus of defendant's effort to gain a new trial.

The fatal shooting occurred at approximately 11:15 p.m. on 2 February 1998. Doris Bryant testified at trial that she witnessed the shooting from the parking lot of her apartment building located near the KFC. She stated that a Chevy Suburban was parked in the parking lot of the KFC restaurant on Md. Route 202 in Cheverly, Maryland. She described six principal actors at the scene of the shooting. One tall black man stood in the shadows of the parking lot fence with a "shiny object" in his hand, later confirmed to be a gun; a second black man, described by the witness as "chubby" and later confirmed to be one Walter Fleming, exited the passenger's side of the Chevy truck and walked towards a phone booth; a third man, later alleged to be Campbell, walked from the street towards the passenger's side of the truck; and, a fourth man was walking from the KFC to the driver's side of the truck. Ms. Bryant heard a "pop" sound, followed by a

fifth young man, in a crouching position, getting out of the Suburban from the rear passenger's side. The exiting passenger started shooting a gun at the man standing at the phone booth. Campbell, who was standing at the driver's side of the Suburban, was shooting into the car at yet another man seated behind the steering wheel (later identified to be Milton J. Hill). At some point, Ms. Bryant testified, Campbell also began shooting at the man by the phone booth. The man at the phone booth, Fleming, after executing a drop and roll maneuver, got up, and ran into a 7–11 store located in the same parking lot as the KFC. Ms. Bryant reported that Fleming did not appear to have a gun and that the man standing by the fence did not fire his gun. All, save Hill and Fleming, fled the scene of the crime after one of the shooters noticed Ms. Bryant.

Hill was pronounced dead at the scene and Fleming was transported on advanced life support to a hospital. Fleming survived. He told the police officer who arrived first at the scene before he was transported that "Inky shot me.... Inky rolled up and shot me and my boy." "Inky" was later confirmed to be the *nom de guerre* of Lawrence Campbell, Petitioner.

Campbell was tried by a jury in the Circuit Court for Prince George's County.[1] At trial, the State introduced no physical evidence of criminal agency, relying instead on the testimony of Doris Bryant, Walter Fleming, and Oscar Veal. Fleming gave testimony about his thirteen-year career as a drug dealer handling substantial amounts distributed over a large geographic area.[2] On the day of the shooting, Petitioner had

---

**1.** Campbell was indicted by a grand jury for common law murder, two counts of use of a handgun in the commission of a felony, attempted murder, second degree assault, robbery with a deadly weapon, two counts of conspiracy to commit murder, and conspiracy to commit robbery with a deadly weapon.

**2.** Fleming had been arrested and convicted of drug distribution charges in federal court in the Eastern District of Virginia. He only offered to testify against Petitioner after entering into a plea agreement with the

ordered $16,000.00 worth of cocaine from Fleming. Fleming and his friend, Milton J. Hill, met Petitioner at an arranged meeting place to deliver the requested cocaine. They agreed to reconvene fifteen minutes later at the KFC parking lot for delivery of the purchase money. After waiting in the truck in the parking lot for about half an hour, Fleming walked to the pay phone leaving Hill in the truck. As he did so, the shooting began. Fleming claimed that he struggled hand-to-hand with one of the gunmen, but that the person who shot him was not Campbell.

The other witness for the State, Oscar Veal, Jr., was a drug dealer and self-confessed "hit man." [3] Veal testified that, in the summer of 1998, Petitioner told him he had committed a murder at a KFC in Maryland resulting from "drugs and money, and a gentleman was killed because he was with [Fleming]." He also testified that Campbell told him that the man who had been killed "was a guy that was with another gentleman who was a witness." That man clearly was Fleming. During the course of his testimony, Veal admitted to killing seven people within an eighteen-month period. He appeared in court wearing a religious headdress and further intimated that his willingness to testify in Petitioner's trial resulted from a religious rebirth that coincided with his federal conviction and sentencing. On the basis of this evidence, Petitioner was convicted of the attempted first degree murder of Fleming and second degree murder of Hill, as well as conspiracy to murder Hill and conspiracy to murder Fleming.

On 29 December 2000, ten days after the verdict was entered, defense counsel filed a motion for a new trial. Counsel alleged the existence of newly discovered exculpatory

federal prosecutor that provided his sentence could be reduced if he cooperated with the authorities in the instant case.

3. Veal testified in the present case pursuant to a plea agreement with the federal government in the United States District Court for the District of Columbia. The agreement provided that the Government would not seek the death penalty for any of the murders Veal pled guilty in exchange for his truthful testimony in various drug-related cases, including the present matter.

evidence that was divulged to defense counsel for the first time three days after the verdict. The motion proffered that a former associate (Naurice Bland) of Fleming's long-time rival, Roy Cobb, was prepared to testify that Cobb had set-up Fleming at the KFC and that Cobb had shot Hill and Fleming. It was alleged also that Bland would assert that Fleming retaliated by murdering Cobb a few months after the KFC shooting.

On 9 January 2001, defense counsel filed a supplement to the original motion for a new trial. The supplement proffered that additional evidence had been newly discovered[4] from Joseph Penny, Fleming's cell-mate at the Arlington County Detention Center. Penny's sworn statement to defense counsel attested that Fleming had told him he was "set up" by Cobb at the KFC. In response to the motion and supplement, the State filed an "Opposition to Defendant's Motion for New Trial" denouncing the credibility of the Penny and Bland statements, arguing that the new evidence was immaterial, and asserting that defense counsel failed to show that the newly discovered evidence from Penny could not have been discovered by due diligence in time to file with the original motion. Petitioner filed a responsive pleading on 20 February 2001, relying on Maryland Rule 4–331(a)[5] and Maryland Rule 4–331(c),[6] to support his proffer of the Bland and Penny

---

4. It was alleged that "[o]n January 8, 2001, [defense] counsel received information that within the past 3–4 days, a Prince George's County Detention Guard [ ], contacted Lawrence Campbell" regarding what Penney told the Guard.

5. Maryland Rule 4–331(a) provides: "On motion of the defendant filed within ten days after a verdict, the court, in the interest of justice, may order a new trial."

6. Maryland Rule 4–331(c) provides in relevant part:
   Newly discovered evidence. The court may grant a new trial or other appropriate relief on the ground of newly discovered evidence which could not have been discovered by due diligence in time to move for a new trial pursuant to section (a) of this Rule:
   (1) on motion filed within one year after the date the court imposed sentence or the date it received a mandate issued by the Court of Appeals or the Court of Special Appeals, whichever is later; ...

evidence, respectively. Additionally, Petitioner proffered additional new evidence that Oscar Veal previously had accused falsely another person of murder in an unrelated case.[7] The State responded to the allegations concerning Veal's credibility by stating,

> nowhere in Oscar Veal's statement to the FBI does he say that Derrick Moore was present when Clyburn was killed. Thus, there is no impeachable evidence against Veal. Assuming arguendo that it is, the law is clear that the evidence must be more than merely cumulative or impeaching in order to be considered newly discovered evidence.

The trial court heard the post-trial motion on 23 February 2001, the same day scheduled for Campbell's sentencing. Petitioner elected not to press further that the Bland testimony would support a new trial, thereby abandoning that contention. Instead, Petitioner relied on the statements of Penny and the new evidence concerning Veal's credibility. In assessing the arguments regarding Penny's sworn statement, the judge stated "I have no confidence in that information. And like I say, it could not be offered for any purpose other than for the possibility of impeachment of Mr. Fleming, and I don't think that it would have had any effect on the verdict of the

---

**7.** During Petitioner's trial, Oscar Veal was cross-examined on the subject of his plea agreement with the government. A copy of the agreement and a twenty page "Information" were entered into evidence. Veal admitted in the Information that he and Derrick Moore killed one Ervon Clyburn. Veal claimed that Moore instructed him to kill Clyburn, indicated to Veal where Clyburn could be found, and transported Veal to the scene of the murder. Petitioner proffered in his reply to the State's opposition that Derrick Moore actually had been incarcerated at the time of the murder and therefore Veal must have lied with respect to Moore's involvement in the Clyburn murder. In the Veal supplement to his motion for new trial, Petitioner acknowledged having information, at the time of Petitioner's trial, that Veal had supplied the information about Moore and the murder of Clyburn to the federal authorities. Apparently monitoring Moore's federal charges, Petitioner claimed to have learned initially of Veal's lie regarding Moore from the U.S. Attorney's pleading filed on 6 February 2001 in Moore's federal case. According to that pleading, Moore's counsel had advised the Assistant U.S. Attorney in January 2001 of the fact that Moore was incarcerated at the time of Clyburn's murder.

jury." The judge also was unpersuaded by the additional impeachment evidence against Oscar Veal as proffered in the second supplement, noting that "[defense counsel was] able to challenge Mr. Veal on the fact that he had committed a number of murders, and what you've just related would just be one more line of impeachment." Thus, rather than conduct an evidentiary hearing regarding the new evidence as to Veal, as requested by Petitioner, the judge denied the motion for a new trial based on the proffer. The State did not press at oral argument on the new trial motion any contention that the trial judge lacked authority under Rule 4–331 to reach and decide the motion based on either the Penney or Veal newly discovered evidence claims.

Campbell appealed to the Court of Special Appeals. The sole issue raised on appeal was whether "the trial court err[ed] in denying appellant's motion for new trial."

Campbell argued to the Court of Special Appeals that proof of Veal's false accusation of Derrick Moore was a type of impeachment different in kind from the impeachment employed at trial concerning Veal's concessions as having committed seven murders.[8] He contended that because proof of his criminal agency in the present case was so weak that the new evidence may have affected the jury's assessment of Veal's credibility resulting in an acquittal. Campbell asserted that the trial judge abused his discretion by denying the motion for a new trial.

---

**8.** Campbell did not address the alleged new evidence from Penny in his brief to the Court of Special Appeals. Petitioner later expressly stated in the petition for writ of certiorari to this Court that this case is limited to the newly discovered evidence regarding Oscar Veal. He stated that despite this limitation, the Bland and Penny new evidence would be discussed simply to provide background to the Veal supplement to the motion for new trial. Because the evidence as to Veal is the only ground raised for error in the petition, the Penny and Bland evidence will not figure materially in our analysis. *See* Maryland Rule 8–131(b) (2000) (stating that "the Court of Appeals ordinarily will consider only an issue that has been raised in the petition for certiorari or any cross-petition and that has been preserved for review by the Court of Appeals"). *See also Gonzales v. State,* 322 Md. 62, 64, 585 A.2d 222, 223 (1991).

In the intermediate appellate court, the State relied on *Isley v. State*, 129 Md.App. 611, 743 A.2d 772 (2000), to support its argument that *whether* a trial court's discretion is exercised in ruling on a motion for a new trial may be an appealable matter, but *how* a trial court exercised that discretion is not. The State acknowledged that Rule 4–331(c) gives the trial judge discretion to order a new trial on the basis of newly discovered evidence, but contended that such evidence cannot be "merely cumulative or impeaching," but must be material to the issues involved such that there was a "substantial or significant possibility that the verdict of the trier of fact would have been affected." *Yorke v. State*, 315 Md. 578, 588, 556 A.2d 230, 234 (1989). The State alleged that Campbell failed to meet any of the criteria of Rule 4–331(c). Furthermore, the State contended, *inter alia*, that Campbell's motion for a new trial based on newly discovered evidence was untimely because the grounds for a new trial urged in the supplements and in the appellate courts were not presented to the trial court in the initial motion.

The Court of Special Appeals, in an unreported opinion, held that the trial court was without authority to decide Petitioner's new trial motion to the extent it relied on the alleged additional impeachment evidence as to Oscar Veal. The court noted that Rule 4–331 demands literal compliance with filing deadlines and "other formal constraints." The court relied on *Ware v. State*, 3 Md.App. 62, 237 A.2d 526 (1968), to conclude that "[i]t is thus clear that a trial court may not disregard the filing deadline." In that case, Ware filed a timely motion for a new trial pursuant to the precursor to current Md. Rule 4–331. After expiration of the time for filing, Ware filed a second motion for a new trial which raised new grounds that were "not germane to any issue raised in the original motion." *Ware*, 3 Md.App. at 65, 237 A.2d at 528. Counsel for both parties in *Ware* stipulated that the trial court should treat the second motion as an amendment to the first. *Id.* Ware appealed the denial of the second motion and the Court of Special Appeals found that the trial court was without authority to hear the belated motion for a new trial.

*Id.* The court stated in *Ware,* and reiterated in its opinion in the present case, that a trial court has "no power to grant ·a new trial under Rule 759 [now 4–331] except pursuant to a timely motion. We think that the parties by stipulation could not give the court power it otherwise would not have had." *Ware,* 3 Md.App. at 65–66, 237 A.2d at 528. Furthermore, the intermediate appellate court opined that "[n]either do we think a motion for a new trial can be amended in such a manner as to make it an entirely different motion after the time for filing such a motion has expired." *Id.*

The Court of Special Appeals found that the supplement to the motion addressing the new evidence regarding Veal was "not germane" to any issue raised in the original motion and therefore could not be considered "timely" under Md. Rule 4–331(a). Not only did the court find that the supplement as to Veal was filed too late to satisfy section (a), but the court also found that it was filed too early to satisfy section (c) because the supplement was filed two months after the verdict, but before sentencing. The Court of Special Appeals concluded that because Campbell's motion for a new trial as supplemented by Veal's proffered testimony was filed too early, the trial judge did not err in declining to hear the evidence proffered by Campbell. The court forewarned that, after the mandate issues in the case, Campbell would have one year to file a motion for a new trial based on newly discovered evidence and, in doing so, will have the "daunting challenge of demonstrating that the newly discovered evidence concerning Veal's credibility was not 'merely impeaching,'" (citing *Love v. State,* 95 Md.App. 420, 433, 621 A.2d 910, 917 (1993)), and if available at trial would have created a "substantial or significant possibility that the verdict ... would [be] affected." *Id.* at 433–34, 621 A.2d 910 (citing *Yorke v. State,* 315 Md. 578, 588, 556 A.2d 230, 231 (1989)).

Campbell sought review of the judgment of the Court of Special Appeals and we granted certiorari to consider the following questions: (1) Did the trial judge have jurisdiction to consider and decide an untimely-filed supplement to a timely filed motion for a new trial? and, (2) If so, did the trial judge

err in denying the motion on the merits? 369 Md. 301, 799 A.2d 1262 (2002).

## II.

### A.

Petitioner's goal is to demonstrate that the trial judge possessed authority to decide the motion grounded on the second supplement, but erroneously denied the motion on the merits. Petitioner argued that once the trial judge's fundamental authority under the Rule was triggered by the timely filed motion for a new trial under Rule 4–331(a), he also possessed discretion to consider supplements to that motion raising substantive additional and new grounds filed before the court acted on the motion, subject only to the State's entitlement to a meaningful opportunity to respond. Petitioner asks us to read Rule 4–331 as providing that when new evidence is discovered between the time the verdict is rendered and before sentence is imposed, and the defendant already has filed an otherwise timely motion for a new trial within ten days of the verdict, but no hearing has been held on the motion, then the trial judge may exercise his or her discretion to hear the motion and its supplement(s) at the motion hearing.

Petitioner's first contention is that nothing in Md. Rule 4–331 restricts the right of the trial judge to consider "out-of-time" supplements to timely filed motions for a new trial. Claiming that the cases relied upon by the Court of Special Appeals in its opinion were inapposite because they did not involve supplements to timely filed motions, Petitioner instead hails another case, *Ware v. State*, 348 Md. 19, 702 A.2d 699 (1997), as more analogous to the present matter. The jury in that death penalty case returned a guilty verdict against the defendant. After the verdict was rendered, but before sentence was imposed, the defendant filed a timely motion for a new trial which counsel sought to supplement with newly discovered evidence regarding a violation of defendant's *Bra-*

*dy* rights.[9]  348 Md. at 34, 702 A.2d at 706.  The Circuit Court denied the motion for a new trial after considering both the motion and its supplement.  348 Md. at 35, 702 A.2d at 707.  On review in this Court, we considered the merits of the supplement to the motion for a new trial, found error in its denial, and granted the defendant a new trial.  348 Md. at 68, 702 A.2d at 723.  Petitioner claims that *Ware* stands for the proposition that a trial judge may exercise discretion to consider supplements to a timely filed motion for a new trial in deciding the motion and contends that if *Ware* was decided correctly the judgment of the Court of Special Appeals in this case necessarily must be erroneous.[10]

Next, Petitioner asserts that the organizational structure of Md. Rule 4–331 supports his contention that the trial judge has discretion to consider out-of-time supplements to a timely filed motion for a new trial.  This is so, he argues, because Rule 4–331 creates multiple, grounds-driven deadlines for motions for a new trial:

(a) Within ten days of verdict.  On motion of the defendant filed within ten days after a verdict, the court, in the interest of justice, may order a new trial.

(b) Revisory power.  The court has revisory power and control over the judgment to set aside an unjust or improper verdict and grant a new trial:

. . . . (2) in the circuit courts, on motion filed within 90 days after its imposition of sentence.

---

**9.**  *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (holding that the State has an affirmative duty to disclose exculpatory evidence to the defendant in a criminal trial).

**10.**  One may not tell from this Court's opinion in *Ware:* (1) whether the initial motion for new trial was filed within ten days of the verdict, as provided for in Rule 4–331(a); or (2) when the supplement was filed relative to the filing of the original motion for new trial.  Moreover, it does not appear that the State challenged in *Ware*, at any level, the trial court's authority to consider the grounds advanced in the supplement on the same or similar basis as the State now advances in the present case.

(c) Newly discovered evidence.  The court may grant a new trial or other appropriate relief on the ground of newly discovered evidence which could not have been discovered by due diligence in time to move for a new trial pursuant to section (a) of this Rule: . . . .

Petitioner infers from the creation of multiple deadlines that a failure to include in a motion for a new trial filed within ten days of verdict a later discovered ground does not foreclose forever litigation of that additional basis as a ground for a new trial.  In this matter, Petitioner expostulates that had the trial judge, in ruling on the motion, refused to consider the supplemental newly discovered evidence as untimely filed, Petitioner nonetheless could file the content of the relevant supplement as a new motion within one year after sentence or one year after an appellate mandate, pursuant to Rule 4-331(c)(1). Thus, Petitioner argues that the trial judge did not frustrate the purpose of the rule by exercising his discretion to consider the motion and its supplement at a single hearing,[11] and that by receiving the modestly earlier hearing Petitioner had nothing to gain and instead fostered judicial expediency and efficiency.[12]

Petitioner also relied on cases from other jurisdictions to support his reading of the Rule.  Although admitting these

---

**11.**  The fault, if any, contends Petitioner, lies with the practice of deferring sentencing proceedings until after pre-sentence investigations can be completed and deferring hearings on motions for new trials until the day of sentencing.  If sentencing more closely followed the verdict the issue presently before this Court would be moot because motions filed after sentencing would be timely per force of Rule 4-331(c).

**12.**  Petitioner also draws an analogy between Rule 4-331 and Maryland Rule 4-345 to support the interpretation of Rule 4-331 as permitting consideration of a timely filed motion supplemented out-of-time, but prior to hearing.  Md. Rule 4-345(b) gives a trial judge revisory power over a sentence "upon a motion filed within 90 days after ... imposition" of sentence.  Petitioner alleges that the practice in many circuit courts is to hold a motion for reduction of sentence and consider it along with supplemental information at hearings after the defendant has served some portion of his sentence and has an institutional record for consideration.  Pursuant to Rule 4-345(b), the supplemental information may be considered as long as the motion was timely filed within 90 days after sentencing.

cases represent a decided minority view nationally, he directed our attention to cases allowing amendment to motions for a new trial after the filing deadline passed.[13] Petitioner also cites to cases from Florida, Georgia, Indiana, Missouri, and Kentucky that confirm the discretionary power of a trial judge to consider out-of-time amendments to otherwise timely motions.[14]

Petitioner's second main contention is that the trial judge abused his discretion by denying the motion for a new trial on the merits. Noting that the trial judge denied the motion on the basis that the proffered evidence "would just be one more line of impeachment," Petitioner contends that the source language in *Jones v. State*, 16 Md.App. 472, 477, 298 A.2d 483, 486 (1973), relied on by the Court of Special Appeals to conclude that impeaching or cumulative evidence would not justify the grant of a new trial, was dicta and therefore neither binding or persuasive. The *Jones* court employed the pejorative descriptive language "merely cumulative or impeaching." Petitioner finds an "obvious difference" between *"impeaching"* and *"merely impeaching"* and concludes that impeachment evidence may sometimes be important enough that its inclusion "may well have produced a different result." *See Love v. State*, 95 Md.App. 420, 433, 621 A.2d 910, 917 (1993) (stating that the law suggests a difference between evidence that is "impeaching" and evidence that is "merely impeaching"). Petitioner asserts this is such a case. The testimony that Oscar Veal had accused Moore falsely of murder may have inspired the jury to distrust Veal's statement that Campbell murdered

---

13. *See McCutcheon v. State*, 159 Tex.Crim. 61, 261 S.W.2d 329 (1953); *Bottom v. State*, 105 Tex.Crim. 75, 286 S.W. 1091 (1926); *Banks v. State*, 79 Tex.Crim. 508, 186 S.W. 840 (1916); *Tores v. State*, 74 Tex.Crim. 37, 166 S.W. 523 (1914); *Kinney v. State*, 65 Tex.Crim. 251, 144 S.W. 257 (1912); *Carusales v. State*, 47 Tex.Crim. 1, 82 S.W. 1038 (1904). Petitioner notes that the Texas cases prompted the Texas legislature to adopt a statute specifying the number of days to amend a motion for a new trial after filing.

14. *See e.g., Smith v. State*, 117 Fla. 458, 158 So. 91 (1934); *Kirkland v. State*, 70 Fla. 584, 70 So. 592 (1915).

Hill. Petitioner further contended that to argue "he's [Veal] a murderer, but that doesn't mean he is a liar" is a more tenable jury argument than "he's a liar, but that does not mean he's lying about this." To Petitioner, in a trial with such little demonstrative evidence of criminal agency, this difference is the difference between evidence that is "impeaching" and evidence that is "merely impeaching." Petitioner therefore urges us to conclude that the newly discovered evidence as to Veal may well have produced a different result.

Respondent, in turn, argues that the Court of Special Appeals correctly held that the trial court lacked authority to decide an untimely filed supplement that raised a ground not raised in the timely motion for a new trial and, alternatively, that the trial court properly exercised its discretion in denying the motion based on the supplemental grounds. Respondent construes Petitioner's argument as asking us to read additional language into Rule 4–331. In the absence of express language in Rule 4–331, "legislative" history supporting such an interpretation of the Rule,[15] or case law supporting such an interpretation, Respondent contends that Petitioner's thesis that trial courts have discretion to consider untimely-filed supplements to a timely filed motion for a new trial is untenable.

Respondent observes that each section of Rule 4–331 provides a deadline for filing a motion for a new trial keyed to the grounds asserted. Section (a) provides the shortest period in which to file, but the broadest basis upon which relief can be granted ("in the interest of justice"). Section (c) provides the longest time period for filing a motion, but has the narrowest grounds for relief ("newly discovered evidence"). *See Love,* 95 Md.App. at 428–29, 621 A.2d at 915. Respondent characterizes the Rule 4–331 filing deadlines as jurisdictional in nature. Noting that Maryland Rule 1–204(a) specifies that a court

---

**15.** Indeed, we could find but scant "legislative" history of any direct relevance regarding Rule 4–331 or its predecessors, despite recourse to the records of this Court and its Standing Committee on Rules of Practice and Procedure.

"may not shorten or extend the time for filing . . . a motion for new trial . . . ," the State reminds us that "the Maryland rules are not merely 'guides' to the practice of law, but are 'precise rubrics' to be read and followed." *See Parren v. State,* 309 Md. 260, 280, 523 A.2d 597, 606 (1987).

The plain language of the Rule, argues Respondent, by providing a timetable for when motions may be filed and what grounds may be considered clearly does not provide for continuing the jurisdiction of a trial court to consider supplements to a motion for a new trial once a particular motion has been filed timely and the time expired for filing that category of motion. Although it finds the language of the rule to be clear and unambiguous, Respondent contends that a statute relating to the same subject matter, former Maryland Code (1957, 1996 Repl.Vol.), Article 27, § 594,[16] may be instructive in interpreting the Rule. Section 594 provided that a hearing on a motion for a new trial shall be heard within ten days of its filing, but it specifically allowed the time for the hearing to be extended by agreement of the parties or by order of court. Respondent contrasts the Legislature explicitly creating the possibility of an extension in section 594 with the lack of explicit language in Rule 4–331 to suggest that the filing deadlines in the Rule cannot be extended for supplements or otherwise.

Respondent commends to us the same cases relied upon by the Court of Special Appeals in its opinion in this case. For example, the State finds sustenance for its views in *Ware v. State,* 3 Md.App. 62, 237 A.2d 526 (1968), discussed supra at 646–47.

Respondent agrees with Petitioner that it is the minority view in our sister states that a timely filed motion for a new trial may be supplemented with new grounds after the time for filing the original motion has passed. The State enunciates that the "government's legitimate interest in finality" and "carrying out punishment in order to promote respect for the

---

**16.** Now codified in Maryland Code (2002), Maryland Crim. Proc., § 6–105, without substantive change.

law and its procedures" are policy reasons requiring strict adherence to filing deadlines. Bolstered by these policy bases, Respondent urges that Petitioner's claim that the supplemental grounds may be brought as a motion for a new trial under Rule 4–331(c) is false. The State perceives that the evidence could have been discovered either before or during trial or within ten days of the verdict, commenting that the information that Moore was incarcerated at the time of Clyburn's murder was information obtainable by the defense throughout trial and, therefore, the evidence does not fall within the limited scope of section (c) of the Rule. Respondent conjures the portent that to accept Petitioner's construction of the Rule would eviscerate the Rule by allowing *any* ground for a new trial to be raised at *any* time prior to the hearing on the motion. Such an interpretation, the State insists, confers jurisdiction where none exists and renders the deadlines in Rule 4–331 meaningless.[17]

The State also argues that even if the trial court possessed the authority to consider the supplement as part of the motion, its denial was a correct exercise of discretion. Respondent urges us to uphold the determination made by the Court of Special Appeals that such evidence as would impact on the credibility of one of the State's witnesses only would be cumulative impeachment evidence and therefore falls short of the standard for the grant of a new trial. The State claims that the evidence proffered in the relevant supplement to the motion for a new trial does not meet the requirements for the grant of a new trial, that is: (1) the new evidence is material

---

**17.** The State also finds fault in Petitioner's analogy between Rule 4–331 and Rule 4–345. Respondent's first critique of the analogy is that pursuant to Rule 4–345 it is the timely filing of the motion that vests the court with authority to reconsider the sentence, whereas in Petitioner's case the supplement was not timely filed and therefore the court would not have authority to decide it as such. Second, Respondent argues that Rule 4–345 contemplates the addition of further sentencing considerations, whereas Petitioner urges on this Court the consideration of wholly new ground for a new trial. According to the State, these differences between Rule 4–331 and Rule 4–345 are significant enough to destroy Petitioner's attempted analogy.

to the issues involved and not merely cumulative or impeaching, and (2) there was "a substantial or significant possibility that the verdict of the trier of fact would have been affected by the new evidence." *Yorke*, 315 Md. at 588, 556 A.2d at 234–35.

The new evidence regarding Veal, the State says, does not impeach his testimony because the documentation presented by Petitioner failed to show that Veal falsely claimed that Moore was both present at and responsible for Clyburn's death or that the charges were dismissed against Moore because Veal lied. Even if the evidence did impeach Veal, it would be collateral, rather than material, evidence because it only shows that Veal lied about an unrelated matter not bearing directly on the evidence he presented at Campbell's trial. The evidence as to Veal also would be immaterial, according to the State, because it is merely cumulative to the ample impeachment of Veal undertaken at trial. Additionally, Respondent believes that Petitioner failed to demonstrate that the additional evidence created a substantial possibility that the jury's verdict would have been affected. Veal was not a critical witness, according to the State, and Petitioner engages in mischaracterization when he states that there was little evidence of criminal agency in addition to Veal's testimony. The heart of its case, urges the State, lay in the testimony of Fleming and Doris Bryant.

### B.

This Court long has recognized that a new trial may be granted by the judge in a criminal case tried to a jury. *See In re Petition for Writ of Prohibition*, 312 Md. 280, 308, 539 A.2d 664, 677–78 (1988) (chronicling the common law origins of the motion for a new trial). Such a motion is regulated currently by the provisions of Md. Rule 4–331. Maryland Rule 4–331 provides for three distinct situations in which a criminal defendant may file a motion for a new trial. The broader the recognized grounds for a new trial, the stricter are the timeliness filing requirements; as the recognized grounds become narrower, the timeliness filing requirements relax somewhat.

Section (a) of the rule allows a trial judge to award a new trial if he or she determines it to be "in the interest of justice" and the motion is filed within ten days after a verdict is rendered. Rule 4–331(b) provides the circuit court with the power to set aside an unjust or improper verdict on motion filed within ninety days after imposition of sentence or in cases of fraud, mistake, or irregularity on motion filed beyond ninety days. The narrowest ground for a new trial is provided in section (c). Section (c) permits the court to grant a new trial on the basis of newly discovered evidence "which could not have been discovered by due diligence in time to move for a new trial pursuant to section (a) of this Rule." Section (c) further stipulates, in pertinent part, that such motion must be filed before the later of one year after sentence was imposed or when the trial court received a mandate issued by one of the appellate courts.[18]

The regulatory scheme does not provide any express guidance regarding untimely filed supplements or amendments to an otherwise timely motion for a new trial. The question presented by Petitioner—whether a substantive supplement raising an additional and new ground, filed outside of the allotted time for filing the motion, but before a hearing on the motion, may be considered by the trial judge together with the grounds advanced in the timely filed motion for a new trial— has not yet been addressed by this Court. The Court of Special Appeals, however, has addressed issues similar to this on at least two occasions, in *Ware v. State,* 3 Md.App. 62, 237 A.2d 526 (1968) and *Love v. State,* 95 Md.App. 420, 621 A.2d 910 (1993). We discussed *Ware* somewhat earlier, supra at 646–47.

In its opinion in *Ware,* the intermediate appellate court relied on *Giles v. State,* 231 Md. 387, 190 A.2d 627 (1963) and *State v. Tull,* 240 Md. 49, 212 A.2d 729 (1965). *Giles* held that

---

18. If the new evidence would show that the defendant is innocent of a capital crime or if the motion is based on DNA evidence which would prove the defendant's innocence the motion may be filed at any time. Md. Rule 4–331(c)(3).

a motion for a new trial filed almost one year after conviction was not timely filed pursuant to former Maryland Rule 567 (1963) [19] and, therefore, it was denied properly. 231 Md. at 388, 190 A.2d at 628. *Tull* presented a similar procedural scenario. In *Tull* we stated that the trial court had no power to grant a new trial pursuant to former Md. Rule 759(a), but instead we treated the untimely filed motion for a new trial as an application for post-conviction relief and reached the merits in that way. 240 Md. at 52–54, 212 A.2d at 729–31.

The Court of Special Appeals also addressed Rule 4–331 in *Love v. State*. Love was convicted of armed robbery, among other things, and was sentenced on 4 October 1989. A motion for a new trial was denied by the trial judge on 14 May 1992. The motion for a new trial alleged the discovery of new evidence which would cast "grave doubt on the jury's verdict that [Love] possessed a deadly weapon and that the convictions ... represented a serious miscarriage of justice." 95 Md.App. at 424, 621 A.2d at 913. The court based its holding primarily on it's interpretation of the phrase contained in section (c) requiring the newly discovered evidence to be that "which could not have been discovered by due diligence." 95 Md.App. at 429, 621 A.2d at 915. The court applied the *Yorke* test for evaluating newly discovered evidence and found that the new evidence proffered by Love was such that the trial judge's finding that there was an absence of due diligence was within his discretion. 95 Md.App. at 435, 621 A.2d at 918. Addressing the timeliness requirement of section (c), the Court of Special Appeals noted that the "rule calls for literal compliance" and "[t]rial judges, moreover, are not empowered to overlook" the filing deadlines prescribed for motions for new trial. 95 Md.App. at 428, 621 A.2d at 914. Although the issue before the court was disposed of based on an analysis of "due diligence" and what constituted discovery of "new evidence," the Court of Special Appeals said that to accept Love's

---

**19.** Rule 567(a) was substantively the same as Rule 4–331(a) with the difference that the former provided three days to file a motion for a new trial while the latter provided for ten days.

argument, that the technical requirements of the rule should be overlooked in order to prevent a miscarriage of justice, would render nugatory the requirement that a motion be filed within one year after the later of the triggering events contained in section (c). 95 Md.App. at 438, 621 A.2d at 920.

In similar reasoning, the Court of Special Appeals in the present case, agreeing with Respondent's view, concluded that "Maryland Rule 4–331 demands literal compliance," and found that Petitioner's relevant supplement to his motion for a new trial failed to comply with the filing requirements of Rule 4–331(a) or (c). We agree only insofar as concerns late-filed supplements under section (a). A different result obtains, however, if such a supplement, raising newly discovered evidence as its ground, is viewed as having been filed prematurely under section (c) of the Rule.

As noted *supra*, Maryland Rule 1–204(a) specifically provides that "[t]he court may not shorten or extend the time for filing . . . a motion for new trial." Maryland law and the rules are silent, however, regarding whether "untimely" filed supplements to timely filed motions are to be treated as permissible supplements to the original motion or as separate and discrete motions having to meet the filing deadlines applicable to the particular ground or grounds of the motion.

A few of our sister states have regulatory provisions expressly allowing exceptions to the prescribed filing time limit for supplements filed beyond the deadline for the motion itself.[20] Jurisdictions lacking such regulatory direction on the issue, not surprisingly, are split in their case law interpretations between those allowing "untimely" amendment and those disallowing such amendment.

A majority of jurisdictions reaching the issue hold that a motion for a new trial filed in due time may not be amended or

---

**20.** *See, e.g.,* Florida Rules of Criminal Procedure, Rule 3.590(a) (2002); Georgia Code Annotated § 5–5–40(b) (2002); Tennessee Rules of Criminal Procedure 33(b) (2002); Texas Rules of Appellate Procedure 21.4 (2002).

supplemented after the filing period.[21] These courts reason that in the absence of a rule or statute allowing such amendment or supplement to a timely filed motion for a new trial there exists no right to supplement a motion and the trial court therefore does not have authority to consider the amendment. *See Missouri v. Gray,* 24 S.W.3d 204, 208–09 (Mo.Ct. App.2000) (finding that an amendment to a motion for a new trial filed outside the time limit for filing the motion was a procedural nullity and could not form the basis for appellate review); *United States v. Kane,* 319 F.Supp. 527 (E.D.Pa. 1970), *aff'd* 433 F.2d 337 (3d Cir.1970) (stating that Federal Rule of Civil Procedure 33 was mandatory and the court was without authority to consider untimely filed amendments to a motion for new trial). Amendments must meet the same filing deadlines as the original motion and an "untimely" filed amendment is treated as a nullity and presents nothing to review in these states. *Johnson v. Oklahoma,* 70 Okla.Crim. 322, 106 P.2d 128 (1940).

The minority view is that a trial court has discretion to permit amendment after the period for filing the motion for a new trial has expired. For example, a Texas appellate court held that the act of holding a hearing on a late filed amended motion constituted leave to file the amended motion, although the trial judge did not expressly give the defendant leave to file late. *Sweeten v. State,* 686 S.W.2d 680 (Tex.App.1985).[22]

---

**21.** *See Parris v. Alabama,* —— So.2d ——, 2001 WL 996295, 2002 Ala.Crim.App. LEXIS 252; *California v. Long,* 7 Cal.App. 27, 93 P. 387 (1907); *Hardy v. Colorado,* 133 Colo. 201, 292 P.2d 973 (1956); *Delaware v. Halko,* 193 A.2d 817 (Del.Super.Ct.1963); *Territory of Hawaii v. Witt,* 27 Haw. 177 (1923); *Pitts v. Commonwealth of Kentucky,* 227 Ky. 792, 13 S.W.2d 1053 (1929); *Maine v. Campbell,* 451 A.2d 299 (Me. 1982); *Missouri v. Gray,* 24 S.W.3d 204 (Mo.Ct.App.2000); *McCoy v. Nebraska,* 110 Neb. 360, 193 N.W. 716 (1923); *Johnson v. Oklahoma,* 70 Okla.Crim. 322, 106 P.2d 128 (1940); *Oregon v. McDaniel,* 39 Or. 161, 65 P. 520 (1901); *Buckner v. Wisconsin,* 56 Wis.2d 539, 202 N.W.2d 406 (1972); *Bird v. Wyoming,* 34 Wyo. 112, 241 P. 701 (1925).

**22.** This case was decided prior to the adoption by the Texas legislature of a rule permitting a party to amend a motion for a new trial "without leave of the court" within 30 days after sentencing. *See* n. 20, *supra.* The language "without leave" was determined to contemplate that the

The Texas court in *Sweeten* based its decision on an interpretation of the relevant statute which provided that "[o]ne or more amended motions for new trial may be filed without leave of court before any preceding motion for new trial is overruled...." 686 S.W.2d at 680. The court found that there was "no reason why appellant could not file a late amended motion for new trial *with the leave of the court,* provided such leave in no way" violated the other relevant provisions of the rule. 686 S.W.2d at 682. Another Texas case stated that whether an amended motion for a new trial should be permitted to be filed after the time allowed by law for filing a motion for a new trial is within the sound discretion of the trial court. *Adaire v. State,* 130 Tex.Crim. 1, 91 S.W.2d 367 (1936).

Even among those jurisdictions allowing an "untimely" amendment to an otherwise timely motion for a new trial there is disagreement whether the trial court may consider an "untimely" amendment that raises grounds for a new trial distinct from those alleged in the original motion.[23]

---

trial court may give leave to file an amendment outside of that time frame.

**23.** Some courts hold that a criminal defendant who has filed a timely motion for a new trial may file an amended or supplemental motion after the deadline for filing the original motion has passed if the amendment or supplement is predicated on facts discovered after the expiration of the deadline. *See Grecu v. Indiana,* 233 Ind. 464, 120 N.E.2d 179 (1954) (finding that it is proper to consider a supplemental motion after the filing period has passed based on the theory that such a motion could be construed as a writ of error coram nobis, although not applying that holding to the facts before it); *Sharp v. Indiana,* 215 Ind. 505, 19 N.E.2d 942 (1939) (explaining that a supplemental motion alleging newly discovered evidence that would warrant the grant of a new trial upon a writ of error coram nobis should be considered by the trial court). Our survey indicates that Indiana is the only jurisdiction explicitly adopting this treatment. A few courts adhering to the minority view have held that "untimely" amendment of a motion for a new trial alleging new evidence not related to the reasons advanced in the original motion for a new trial is impermissible based on the theory that such an amendment is actually a new motion and should be subject otherwise to the filing deadlines established for motions for a new trial. *See, e.g., United States v. Haddock,* 956 F.2d 1534 (10th Cir.1992); *Oddo v. United States,* 171 F.2d 854 (2nd Cir.1949).

The Maryland rule governing motions for a new trial in criminal cases is not intended as a cure-all for every perceived flaw in a trial. It is designed only to allow for correction of certain flaws and is restricted by filing deadlines and other procedural requirements. There is a correlation between the breadth of the grounds that may be discovered and stated for granting a new trial and the length of time permitted for filing motions for a new trial. A defendant has ten days to file a motion for a new trial based on virtually any ground whatsoever pursuant to section (a). The more limited grounds for moving for a new trial, in this case newly discovered evidence, are given a greater time within which to be elucidated. Literal compliance with the time limit established in section (a) is a commensurate and reasonable requirement given the broad basis for moving for a new trial provided in section (a). Likewise, the narrower grounds provided for in sections (b) and (c) are reasonably allowed greater time allowances. The technical requirements of the Rule, however, should not be applied without regard to the purposes driving the Rule.

We conclude that the intermediate appellate court's reasoning in *Love, Ware,* and in the instant case is persuasive generally as to amendments or supplements to an initial motion filed timely under Rule 4–331(a), but which amendments or supplements themselves were filed beyond ten days after the verdict. That is also the view of a majority of our sister states. Our inquiry, however, does not end here.

Campbell argues in the alternative that the Veal supplement may be viewed on its own as a separate motion for new trial under Rule 4–331(c), albeit one filed prematurely before sentencing.[24] Viewed in this light, a significant basis exists to

---

**24.** As noted *supra* at 643–45, the alleged new evidence as to Veal was included in Petitioner's 20 February 2001 filing in the Circuit Court. The Court entertained oral argument regarding these allegations on the morning of 23 February 2001, the same day scheduled for Campbell's sentencing. Also as noted *supra* at 643, n. 6, Rule 4–331(c)(1) contemplates, in pertinent part, that a motion for new trial based on newly discovered evidence is to be filed "within one year *after* the date the court imposed sentence...." (Emphasis added).

distinguish the present case from *Ware* and *Love* as decided by the Court of Special Appeals. *Ware* and *Love* only considered supplements filed *after* expiration of the applicable filing deadline in the Rule. Similarly, the cases we examined from other jurisdictions addressed late-filed supplements and amendments. All of those courts found that late-filed amendments were nullities because, at the time they were filed, the trial courts no longer possessed authority because final judgments had been rendered and the supplements to the post-judgment motions were filed beyond the time limits allowed by the relevant rules.

In Maryland, a criminal case is complete and disposed of by a trial court when sentence has been pronounced. *Lewis v. State,* 289 Md. 1, 421 A.2d 974 (1980); *Langworthy v. State,* 284 Md. 588, 399 A.2d 578 (1979). *See* Maryland Code (1973, 2002 Repl.Vol.), Courts & Judicial Proceedings Article, § 12–101(f) (defining "final judgment" as "a judgment, decree, sentence, order, determination, decision, or other action by a court, ... from which an appeal, application for leave to appeal, or petition for certiorari may be taken"). We stated in *Christian v. State,* 309 Md. 114, 120, 522 A.2d 945, 948 (1987), that an order granting or denying a motion for a new trial may be reconsidered by a trial court at anytime prior to sentencing in a criminal case. The trial court in *Christian* retained jurisdiction over the case because there had been no final judgment entered.

Rule 4–331 was crafted primarily to set content-based *outer* limits on when motions for new trial may be filed. The tolling of the one year period within which to file a motion for new trial based on newly discovered evidence described in section (c) of the Rule does not begin until sentencing. By establishing sentencing as the starting point for the one year period, however, the Rule does not divest the trial court of its pre-sentencing fundamental jurisdiction over the case; instead, the purpose of establishing the limit is to allow projection of an end to the litigation and establishes a point at which the trial court no longer has authority over a matter. That

the language invests the court with authority to consider motions for a new trial within one year after sentencing does not mean the court does not have authority to consider such a motion prior to sentencing when no final judgment has been entered.

When a motion for new trial under section (c) is filed prematurely, it may hasten the end of the litigation more so than if it were "timely" filed. As stated earlier, a new trial is not a cure-all mechanism for every perceived procedural wrong in a trial. The interest in providing justice to the accused must be balanced against the systemic interest in predictability, order, and providing a definite end to criminal proceedings. The sparse "legislative" history of the predecessor to Rule 4–331 indicates that the concern motivating the creation of filing deadlines was that a clear end point be established as to when a criminal defendant may petition the court to consider granting a new trial on the various grounds specified in the Rule. Minutes of the 14–15 March 1975 meeting of the Criminal Rules subcommittee of this Court's Standing Committee on Rules of Practice and Procedure reflect the following considerations pertaining to former Rule 759:

> A new trial can be ordered because of newly discovered evidence within 1 year after the imposition of sentence or within 90 days after receipt by the court of a mandate from the Court of Appeals or Court of Special Appeals. Mr. Jones strongly urged that the length of time be extended in order to prevent any innocent person from being convicted. *The committee, however, agreed that public policy requires that a case must end some time and approved the Rule as drafted.*

(Emphasis added). At the time, Rule 759(a) provided a criminal defendant only three days after verdict to file a motion for new trial based on any error at trial. Section (b) of Rule 759 permitted a criminal defendant to file a motion for new trial predicated upon the discovery of new evidence within the later of one year after the imposition of sentence or within ninety days after receipt by the court of a mandate issued by the

Court of Appeals or Court of Special Appeals. The Committee's refusal to adopt Mr. Jones's proposal, implicitly acquiesced in by the Court in adopting Rule 759 as proposed, indicated an interest in establishing clear, outside time limits on new trial motions.

We agree with the reasoning of the courts holding that a supplement to a motion for a new trial that alleges entirely different grounds for relief cognizable elsewhere in the Rule may be treated as a separate motion for new trial. We addressed a similar situation in *Myers v. State*, 137 Md. 482, 113 A. 87 (1921). In that case, appellants were convicted of receiving stolen property. Two days after the verdict was returned, appellants filed two identical motions, one was named "motion for a new trial" and the other "motion in arrest of judgment." After both motions were denied, appellants sought to appeal the denial of the "motion in arrest of judgment," a right which would not have been available for the motion for a new trial. Rather than elevate form over substance, we held that the "motion in arrest of judgment" was substantively a "motion for a new trial" and therefore properly denied and unappealable, pursuant to the rule then governing motions for a new trial. *Myers*, 137 Md. at 487–88, 113 A. 87. Similarly, the Tenth Circuit U.S. Court of Appeals held that a motion for leave to supplement a motion for new trial and a motion for a judgment of acquittal, both asserting grounds not broached in the original motion for a new trial, were substantively "an attempt to have the court consider a new motion for new trial that asserted numerous grounds not asserted in the original new trial motion," and disposed of the motions under the strictures of Fed. R. 33. *United States v. Haddock*, 956 F.2d 1534, 1544 (10th Cir.1992). The Second Circuit U.S. Court of Appeals also has looked to the substance of a self-styled "supplemental motion to a motion for a new trial" to find it substantively to be a motion for a new trial and dispose of it as such. *Oddo v. United States*, 171 F.2d 854 (2nd Cir.1949).

■ The Veal supplement/motion in the present case, although technically not filed within the time frame established by Rule 4–331(c), was filed before final judgment was entered and while the trial court retained jurisdiction over the matter. Thus, the trial judge had discretion to consider the newly discovered evidence ground for new trial raised in the supplement/motion.[25] The reasons for imposing strict filing deadlines are not implicated by premature filings. An early motion does not raise questions about the court's jurisdiction because the court clearly has jurisdiction before final judgment. A trial court's jurisdiction over a matter generally continues until a final judgment is rendered by that court; a verdict without a sentence in a criminal case is not a final judgment. *See Christian,* 309 Md. 114, 522 A.2d 945 (basing our holding, that an order granting or denying a new trial may be reconsidered anytime prior to sentencing in a criminal case, on the premise that a trial court in a criminal case has jurisdiction over the case until final judgment is rendered).

## C.

We now consider the second question presented in this case, whether the trial judge properly denied the motion for a new trial on its merits as to the alleged newly discovered evidence regarding Veal. We find that the trial judge properly exercised his discretion in denying the motion.

■ Contrary to the State's belief, denials of motions for new trials are reviewable on appeal and rulings on such motions are subject to reversal when there is an abuse of discretion. *Mack v. State,* 300 Md. 583, 600, 479 A.2d 1344, 1352 (1984); *Wernsing v. Gen. Motors Corp.,* 298 Md. 406, 420, 470 A.2d 802, 809 (1984). We have noted that the discretion afforded a trial judge "is broad but it is not boundless." *Nelson v. State,* 315 Md. 62, 70, 553 A.2d 667, 671 (1989). The abuse of discretion standard requires a trial judge to use his

---

25. By parity of reasoning, the trial judge, in the sound exercise of discretion, could have declined to consider the Veal supplement and directed Campbell to file it anew after sentencing.

or her discretion soundly and the record must reflect the exercise of that discretion. Abuse occurs when a trial judge exercises discretion in an arbitrary or capricious manner or when he or she acts beyond the letter or reason of the law. *Ricks v. State,* 312 Md. 11, 31, 537 A.2d 612 (1988). As we indicated in *Buck v. Cam's Rugs,* 328 Md. 51, 612 A.2d 1294 (1992), "a trial judge has virtually no 'discretion' to refuse to consider newly discovered evidence that bears directly on the question of whether a new trial should be granted," and a new trial should be granted when newly discovered evidence clearly indicates that the jury has been misled. 328 Md. at 58–59, 612 A.2d at 1298. In the context of the denial of a motion for a new trial in a criminal case, we have noted that "under some circumstances a trial judge's discretion to deny a motion for a new trial is much more limited than under other circumstances." *Merritt v. State,* 367 Md. 17, 29, 785 A.2d 756, 764 (2001). We stated,

> it may be said that the breadth of a trial judge's discretion to grant or deny a new trial is not fixed or immutable; rather, it will expand or contract depending upon the nature of the factors being considered, and the extent to which the exercise of that discretion depends upon the opportunity the trial judge had to feel the pulse of the trial and to rely on his own impressions in determining questions of fairness and justice.

*Wernsing,* 298 Md. at 420, 470 A.2d at 802.

To determine whether a new trial is warranted in a criminal case based on newly discovered evidence the trial judge should apply the test formulated in *Yorke v. State,* 315 Md. 578, 556 A.2d 230 (1989). *Yorke* involved a motion for a new trial filed by a defendant four years after the crimes were committed. 315 Md. at 580–81, 556 A.2d at 231. The motion was based on newly discovered DNA evidence allegedly showing that the defendant was not the criminal agent. *Id.* The Circuit Court denied the motion and this Court affirmed that ruling. 315 Md. at 581, 556 A.2d at 231. In order for the newly discovered evidence to warrant a new trial, the trial judge must find it to be both material and persuasive such

that "[t]he newly discovered evidence may well have produced a different result, that is, there was a substantial or significant possibility that the verdict of the trier of fact would have been affected." 315 Md. at 588, 556 A.2d at 234–35. This Court noted the need for a clear and articulate standard given that "the courts generally play by ear with an ad hoc approach whether the newly discovered evidence calls for a new trial," and formulated the appropriate standard by evaluating the "probability" standard[26] employed by many federal courts and the "might" standard[27] relied upon by the minority of jurisdictions to create a standard falling between the two. 315 Md. at 588, 556 A.2d at 235.

Applying that standard to the facts of *Yorke*, we concluded that the trial judge did not abuse his discretion in considering the DNA evidence as it "touch[ed] upon evidence that was presented" at trial and was " 'material' to some extent to the outcome of the case." 315 Md. at 585, 556 A.2d at 233. Yorke had been convicted of first degree rape, first degree sexual offense, kidnaping, and carrying a weapon openly. 315 Md. at 579, 556 A.2d at 230. At the motions hearing Yorke presented the newly discovered evidence to establish that the DNA fingerprint from the vaginal washing did not match his DNA fingerprint and therefore he could not have raped the victim. 315 Md. at 588, 556 A.2d at 235. Testimony was taken at the hearing, however, that indicated the possibility that the DNA from the vaginal wash may have been the blood of the victim. A blood sample from the victim yielded an inconclusive result though. 315 Md. at 588–89, 556 A.2d at 235. The trial judge considered the newly discovered evidence in light of the evidence that was before the jury at trial and concluded that "all the new evidence shows is that Yorke 'could not have been

---

**26.** The "probability" standard refers generally to evidence that is "so material that it would probably produce a different verdict if a new trial were granted." *Berry v. Georgia,* 10 Ga. 511, 527 (1851).

**27.** The "might" standard has been articulated as evidence creating "more than a faint possibility of a different jury verdict but something less than probable." *See United States v. Wallace,* 528 F.2d 863, 866 n. 3 (4th Cir.1976).

the depositor of the semen.'" 315 Md. at 589–90, 556 A.2d at 235. The evidence presented at trial, however, included the victim's testimony that she was unsure whether her rapist ejaculated and that she had sex with her boyfriend shortly before the rape incident. *Id.* The trial judge decided that the new evidence, when weighed with the evidence before the jury, would not affect the verdict such that the outcome would be different. We concluded that although the new evidence "may well have produced a different result," there was not a "substantial or significant possibility" that it would do so. *Id.* We therefore held that the trial judge did not abuse his discretion in denying the motion for a new trial.

*Argyrou v. State,* 349 Md. 587, 709 A.2d 1194 (1998), also concerned the evaluation of newly discovered evidence advanced in a new trial motion under Rule 4–331(c). Argyrou was convicted for his participation in the theft of various items of construction equipment from a rental store through the use of stolen identification. 349 Md. at 590, 709 A.2d at 1195. He moved for a new trial alleging the discovery of new evidence. The newly discovered evidence consisted of a signed confession, in the form of an affidavit, from another man asserting that the affiant committed the crime for which the defendant was convicted. 349 Md. at 591, 709 A.2d at 1195. Also at the motions hearing, Argyrou presented a handwriting expert who testified that the forged signature involved in the crime was made by the affiant as opposed to the defendant. *Id.* The trial judge denied the motion for a new trial finding that although the testimony of the affiant might well produce an acquittal upon retrial, the defendant failed to meet his burden of showing that the identity of the affiant and his testimony were unknown to the defendant at the time of trial. 349 Md. at 598, 709 A.2d at 1199.

In *Argyrou,* we observed that the primary requirements for the grant of a motion for a new trial, pursuant to Rule 4–331(c), are that the newly discovered evidence must not have been discovered, or have been discoverable by the exercise of due diligence, within ten days after the jury has

returned a verdict; the motion must have been filed in the circuit court within the later of one year after the imposition of sentence or the issuance of a mandate by the appropriate appellate court; the newly discovered evidence must be material; and, pursuant to *Yorke,* the trial court must determine that "the newly discovered evidence may well have produced a different result, that is, there was a substantial or significant possibility that the verdict of the trier of fact would have been affected." 349 Md. at 601, 709 A.2d at 1201. Whether the evidence is material and whether the evidence could have been discovered by due diligence are threshold questions that must be resolved before the significance of the evidence may be weighed. 349 Md. at 602, 709 A.2d at 1201. Materiality requires that the evidence be more than "merely cumulative or impeaching." *Id.* We noted in *Argyrou* that the concept of "due diligence" has both a time component and a good faith component and thus "contemplates that the defendant act reasonably and in good faith to obtain the evidence, in light of the totality of the circumstances and the facts known to him or her." 349 Md. at 604–05, 709 A.2d at 1202–03. We concluded in *Argyrou* that there had been no abuse of discretion in denying the motion for a new trial because Argyrou failed to establish that the proffered evidence indeed was newly discovered evidence. 349 Md. at 609, 709 A.2d at 1205.

The trial judge in the present matter denied the motion for a new trial on the basis that "[Defense counsel was] able to challenge Mr. Veal on the fact that he had committed a number of murders, and what you've just related would just be one more line of impeachment." The import of the trial court ruling is that the proffered evidence was viewed as "merely cumulative" to the impeachment evidence presented at trial. Petitioner contends that the trial court abused its discretion by ruling as it did because there was little other evidence of criminal agency presented at trial and the newly discovered evidence may well have produced a different result. He argues that there is an "obvious difference" between evidence that is "impeaching" and evidence that is "merely impeaching," and asserts that the evidence at issue in this

matter was impeaching and therefore sufficient grounds for a new trial. The State reasons to the contrary claiming that the Court of Special Appeals correctly stated that the proffered evidence would be cumulative impeachment evidence which is an insufficient predicate for the grant of a new trial. Furthermore, the State alleges that the evidence regarding Veal would not impeach his testimony at trial.

The main issue is whether the new evidence as to Veal is material. To be material the evidence cannot be "merely cumulative or impeaching." The Court of Special Appeals stated in *Love v. State* that the difference between evidence that is "impeaching" and evidence that is "merely impeaching" is that the latter includes "collateral impeachment and peripheral contradiction." 95 Md.App. at 433, 621 A.2d at 917. That court also stated, however, that whether the testimony presented as a basis for a new trial was impeaching or merely impeaching was ultimately "[not] at all pertinent" to the disposition of the matter and decided the case by concluding that the testimony presented in support of the motion for a new trial was not newly discovered. 95 Md.App. at 433–34, 621 A.2d at 917–18.

The trial judge in the present matter weighed the newly discovered evidence and considered its significance in relation to the evidence already presented at trial. There is no doubt that Petitioner was given ample opportunity to impeach Oscar Veal's testimony at trial. That Veal was a hit-man and drug dealer and that he murdered seven people within an eighteen-month period, standing alone, could be viewed by a reasonable fact-finder as casting serious doubt on his credibility. He also testified that he was paid for committing those murders, sometimes in money and other times in crack cocaine. On cross-examination, Veal also admitted that he lied about his criminal record in order to get into the United States Marine Corps and eventually was discharged when his lies were discovered. The plea agreement entered into between Veal and federal prosecutors was placed in evidence. Veal testified that he sought to avoid the death penalty by cooperating in Campbell's trial and that his sentence in the federal court was

"pending [his] cooperation [concerning the seven murders] and a couple other cases." In light of this, the trial judge declared that the newly discovered evidence was cumulative to that already presented and would "just be one more line of impeachment."

Petitioner contends that there is a distinction between the lines of impeachment presented at trial and that suggested by the new evidence, the difference being one between the possibility that Veal's testimony was untrustworthy because he was a killer as opposed to being untrustworthy because he lied on a prior occasion. Surely the presentation of additional evidence would reinforce the shadows cast initially on Oscar Veal's character and motive for testifying, but the new evidence involved a collateral matter and was cumulative to that already presented.

The second threshold determination to be made is whether Petitioner demonstrated that the newly discovered evidence was not discoverable by the exercise of due diligence in time for trial or within ten days after the verdict. Petitioner failed to meet this threshold requirement as well. We established in *Argyrou* that the burden falls on the defendant to show due diligence by demonstrating that he or she "act[ed] reasonably and in good faith to obtain the evidence, in light of the totality of the circumstances and the facts known to him or her." 349 Md. at 604–05, 709 A.2d at 1202–03. No further consideration of due diligence need be performed here, however, because Petitioner failed to offer any evidence or make any arguments on this record that met his burden to satisfy this requirement.

Even if the new evidence as to Veal was material and Petitioner was found to have exercised due diligence, the trial judge did not act in an arbitrary or capricious manner by denying the motion for a new trial. Applying the *Yorke* test to the record below yields the conclusion that there was not a "substantial or significant possibility" that the verdict below would have been affected by the newly discovered evidence. Even if the additional evidence "may" produce a different result at a new trial, there is not a "substantial or significant

possibility" that it would do so. Given the ample presentation of impeachment evidence at trial and the collateral nature of the newly discovered evidence, we can not say that the trial judge abused his discretion by deciding that the evidence was cumulative impeachment evidence. The trial judge "felt the pulse of the trial" and was entitled to rely on his own impressions to determine, without exceeding the limits of his discretion, that the new evidence bearing on Oscar Veal's trustworthiness was not substantially likely to tip the balance in favor of Campbell.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.*